# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————     )
                                                    )
DAMON IMMEDIATO,                       )
STEPHAN LEVINE, AND                    )
ERIC WICKBERG, on behalf of            )
themselves and all others similarly situated,  )
                                                    )
                              Plaintiffs,       )     C. A. No. 1:20-CV-12308-RGS
                                                    )
v.                                                 )
                                                    )
POSTMATES, INC..,                        )
                                                    )
                              Defendant.     )
———————————————————     )

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S
## MOTION TO COMPEL ARBITRATION

In its Motion to Compel Arbitration (Dkt. 17), Defendant Postmates, Inc. ("Postmates") seeks to compel Plaintiffs Damon Immediato, Stephen Levine, and Eric Wickberg ("Plaintiffs") to individually arbitrate their claims for independent contractor misclassification and related wage violations. In support of its request, Postmates cites a litany of judicial decisions that have slowly choked off the ability of workers like the Plaintiffs to proceed collectively on behalf of their fellow workers. However, these decisions have been under the Federal Arbitration Act ("FAA"), which does not apply here because Plaintiffs fall under an exception for transportation workers, see 9 U.S.C. § 1, and Oliviera v. New Prime, Inc., 139 S. Ct. 532 (2019); without the overlay of federal preemption, Massachusetts law does not allow enforcement of arbitration agreements containing class action waivers. See infra Part I.

In addition, Postmates cannot enforce its arbitration agreement against Plaintiffs, since they actually tried to pursue their claims in arbitration – and were not able to – due to Postmates' actions.  Plaintiffs could not arbitrate their claims with the American Arbitration Association ("AAA"), as required under Postmates' agreement (due to Postmates' flouting the AAA rules), and Postmates cannot force Plaintiffs to arbitrate with a different arbitration provider they did not agree to.  See infra Part II.

Finally, the Court also cannot compel arbitration before determining whether an enforceable contract to arbitrate was actually created between Plaintiffs and Postmates under the SJC's recent decision in Kauders v. Uber Technologies, Inc., 486 Mass. 557 (2021).  Such a determination would require the creation of a factual record, for which Plaintiffs would need discovery.

All of these issues are for the Court to decide and cannot be delegated to an arbitrator. For these reasons, the Court should deny Postmates' motion to compel arbitration.

**ARGUMENT**

**I.  Plaintiffs Cannot Be Compelled to Arbitrate Their Claims Because They Are Exempt from the FAA as Transportation Workers, and Massachusetts Law Would Not Permit Enforcement of Postmates Arbitration Clause Containing a Class Action Waiver**

**A.  The Federal Arbitration Act, 9 U.S.C. § 1, Exempts Plaintiffs and Other Postmates Drivers Because They Are Transportation Workers**

Section 1 of the FAA exempts from the Act's coverage all "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1.  To qualify for the Section 1 exemption from the FAA, an individual must (1) work for a business pursuant to a "contract of employment," (2) be a "transportation worker," and (3) be "engaged in interstate commerce." See Harden v. Roadway Package Sys., Inc., 249 F.3d 1137, 1140 (9th Cir. 2001) (citing Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118 (2001)).  Postmates' drivers, such as Plaintiffs, meet all three criteria and are therefore exempt from the FAA.[1]

As detailed infra, courts in Massachusetts have recently found that workers similar to Plaintiffs are exempt under the FAA. See Waithaka v. Amazon.com, Inc., 966 F.3d 10 (1st Cir. 2020); Cunningham v. Lyft, Inc., No. 2020 WL 1503220 (D. Mass. March 27, 2020), appeal pending, Case No. 20-1357 (1st Cir.); Archer v. GrubHub, Inc.., No. 1984CV03277-BLS1 (Mass. Super. Ct. Jan. 11, 2021) (attached as Exhibit A).

First, Postmates drivers qualify for the Section 1 transportation worker exemption from the FAA because they work for Postmates pursuant to "contracts of employment."  The Supreme Court has held that this exemption applies regardless of whether the contract in question

---

[1]     This issue must be decided by the Court, not delegated to an arbitrator, as the Supreme Court expressly held in in Oliveira, 139 S. Ct. at 534.

classifies the workers as "independent contractors", holding that these contracts fall within the exception because "the [FAA]'s term 'contract of employment' refers to any agreement to perform work" Oliveira, 139 S. Ct. 534.  Thus, for purposes of determining whether Postmates drivers can be subject to arbitration under the FAA, the Court need not even delve at this juncture into the question of whether the drivers actually are employees or independent contractors, because the Section 1 exemption applies either way.

Second, Postmates drivers like Plaintiffs are "transportation workers" within the meaning of Section 1 because they are workers whose primary duty is to physically transport goods, and Postmates' primary purpose is to transport goods – namely, food and other goods from restaurants and stores.  See, e.g., Int'l Broth. of Teamsters Local Union No. 50 v. Kienstra Precast, LLC, 702 F.3d 954, 957 (7th Cir. 2012) (holding truck drivers who delivered goods are transportation workers); Lenz v. Yellow Transp., Inc., 431 F.3d 348, 351 (8th Cir. 2005) (stating that individuals who drive delivery trucks for a company in the transportation industry are "indisputably … transportation worker[s]"); Hill v. Rent-A-Ctr., Inc., 398 F.3d 1286, 1289 (11th Cir. 2005) ("The emphasis, therefore, was on a class of workers in the transportation industry, rather than on workers who incidentally transported goods ….").  Here, the sole purpose of the drivers' work for Postmates is to transport goods (i.e. food and other goods).  See, e.g., Seven-Up/RC Bottling Co. of S. Cal. v. Amalgamated Indus. Workers Union, Local 61, NFIU/LIUNA, 183 F. App'x 643, 643–44 (9th Cir. 2006) (drivers delivering sodas were exempt from the FAA pursuant to Section 1).

Likewise, Postmates' primary function is plainly the transportation of goods; as set forth in Plaintiffs' Complaint, Postmates' website homepage advertises that it offers "Food, drinks, groceries, and more available for delivery", and boasts "We deliver more than dinner. Need

another charger? Kitchen staples? Party supplies? We've got everything you need available for delivery within an hour." See Dkt. 1-1 Exhibit A at ¶ 11. It is plain that the main service being offered by Postmates to restaurants, stores, and customers alike is ***delivery***.[2] Accordingly, Postmates is a transportation company because its main purpose is to transport orders from restaurants and stores to customers.[3]

Finally, Postmates drivers are engaged in interstate commerce because they transport goods in the flow of interstate commerce. See Circuit City, 532 U.S. at 121 (noting that the phrase "engaged in interstate commerce…means engaged in the flow of interstate commerce" and "denotes only persons or activities within the flow of interstate commerce") (quotation marks and citations omitted). When drivers such as Plaintiffs transport goods to customers, which largely originated out of state, the drivers are undoubtedly "engaged in interstate commerce."[4] In accordance with this principle, the First Circuit has held that:

---

[2]    Though some courts have mused in dicta that pizza delivery drivers may not be covered by the exemption, see Hill v. Rent-A-Ctr., 398 F.3d at 1289, and Veliz v. Cintas Corp., 2004 WL 2452851, at *6-7 (N.D. Cal. Apr. 5, 2004), these cases differ from this case because Postmates is clearly in the ***delivery business***, while pizza restaurants are in the pizza business, and pizza delivery forms only an incidental, not necessarily core, part of their business.

[3]    Plaintiffs expect Postmates to argue that it is not a transportation company but is instead a "technology" company or "platform", connecting customers with independent contractor delivery drivers. This argument has been rejected by other courts considering similar arguments by such companies as Uber, see, e.g., O'Connor v. Uber Techs., Inc., 82 F. Supp. 3d 1133, 1137, 1141 (N.D. Cal. 2015) (rejecting Uber's argument that "it is a technology company and not a transportation company" and instead finding that "Uber is most certainly a transportation company, albeit a technologically sophisticated one"), and FedEx, see Schwann v. FedEx Ground Package Sys., Inc., 2013 WL 3353776, at *5 (D. Mass. July 3, 2013), aff'd in part, rev'd in part on other grounds, 813 F.3d 429 (1st Cir. 2016) ("Whether intended as shorthand for a more metaphysical purveyor of logistics business entity or not, FedEx advertises that it offers package pick-up and delivery services and its customers have no reason to believe otherwise."). Regardless of the company's arguments in attempting to redefine itself, there can be no question that Plaintiffs were transportation workers as they were indisputably delivery drivers.

[4]    Postmates may argue that the prepared meals that its drivers deliver are no longer in the flow of interstate commerce because the interstate journey of raw ingredients that are later

> [t]he original meaning of the phrase 'engaged in ... interstate commerce,' revealed by the FELA precedents, and the text, structure, and purpose of the FAA, all point to the same conclusion: … **last-mile delivery workers who haul goods on the final legs of interstate journeys are transportation workers 'engaged in ... interstate commerce,' regardless of whether the workers themselves physically cross state lines.** By virtue of their work transporting goods … 'within the flow of interstate commerce,' Waithaka and other AmFlex workers are 'a class of workers engaged in ... interstate commerce.' Accordingly, the FAA does not govern this dispute, and it provides no basis for compelling the individual arbitration required by the dispute resolution section of the Agreement at issue here.

Waithaka, 966 F.3d at 26 (emphasis added) (internal citations omitted) (citing Circuit City, 532

U.S. at 118, 121 S.Ct. 1302).[5] Numerous courts have concurred with the First Circuit that

---

transformed into prepared meals ends when those ingredients are delivered as inventory for local restaurants. This argument fails, as a number of courts have recognized that when food products are transported across state lines, the processing and transformation of the raw goods in the state in which they are ultimately delivered do not end their interstate journey. See Dean Milk Co. v. F.T.C., 395 F.2d 696, 714-15 (7th Cir. 1968); Foremost Dairies, Inc. v. F.T.C., 348 F.2d 674, 676-78 (5th Cir. 1965); Glowacki v. Borden, Inc., 420 F. Supp. 348, 351, 353 (N.D. Ill. 1976) (holding that transformation of pasteurized milk to chocolate milk by adding "sugar, chocolate, and an emulsifier" did not transform the milk to such a degree as to end its interstate journey); Scardino Milk Distribs., Inc. v. Wanzer & Sons, Inc., 71 C 693, 1972 WL 498, at *5 (N.D. Ill. Aug. 11, 1972) (holding that transformation of milk into "four types of cottage cheese, three types of half & half, vanilla and chocolate ice milk mix and sour cream" did not end the milk's interstate journey).

In any event, Postmates drivers deliver prepared food as well as packaged goods, such as sodas and other products, that have traveled interstate and have not been altered in any way by the restaurant and thus are indisputably still in the flow of interstate commerce. See Seven-Up/RC Bottling Co. of S. Cal., 183 F. App'x at 643–44 (drivers delivering sodas were exempt from the FAA pursuant to Section 1). Moreover, it is not necessary that all good that the workers are delivering are in the flow of interstate commerce. See, e.g., Siller v. L & F Distributors, Ltd., 109 F.3d 765 (5th Cir. 1997) (finding interstate commerce where only "approximately 39% of the truckloads … contained some out-of-state products", noting that "even if the hauls contain only slight amounts of goods traveling in interstate commerce, they will be deemed interstate commerce in its entirety.").

[5]      At the time Congress enacted the FAA in 1925, case law under the Federal Employers' Liability Act, ("FELA"), 45 U.S.C. § 51, interpreted the phrase "engaging in interstate commerce" to include intrastate transportation that was one part of a continuous interstate journey or had a strong nexus with the interstate journey. See, e.g., Baltimore & O. S. W. R. Co. v. Burtch, 263 U.S. 540, 542, 544 (1924); Philadelphia & R.R. Co. v. Hancock, 253 U.S. 284, 285 (1920); see also Philadelphia & R R Co v. Polk, 256 U.S. 332, 334 (1921). While ruling on the FAA exception in Oliveira, the Supreme Court held "[i]t's a fundamental canon of statutory

workers may qualify as transportation workers "engaged in interstate commerce" within the meaning of Section 1, even if they themselves do not cross state lines, but instead transport goods who cross state lines "within the flow of interstate commerce." See, e.g., Rittmann v. Amazon.com, Inc., 971 F.3d 904, 919 (9th Cir. 2020) (holding gig economy last-mile delivery drivers for Amazon were exempt, even where deliveries occurred entirely within a state); Nieto v. Fresno Beverage Co., Inc., 33 Cal. App. 5th 274, 281-85 (Cal. Ct. App. 2019), reh'g denied (Mar. 27, 2019) (intrastate liquor delivery driver who transported items solely within California found to be exempt under Section 1); Bacashihua v. U.S. Postal Serv., 859 F.2d 402, 405 (6th Cir. 1988) (postal worker, who made only intrastate deliveries, was engaged in interstate commerce); Palcko v. AirborneExpress, Inc., 372 F.3d 588, 593-94 (3rd Cir. 2004) (supervisor who merely supervised drivers making intrastate deliveries in the "Philadelphia area" was exempt); Cunningham v. Lyft, Inc., 2020 WL 1503220, at *6-7 (holding that plaintiffs who "facilitate [the] last leg of the journey" are exempt under Section 1); Hamrick v. US Pack Holdings, LLC, et al., Civ. A. No.6:19-cv-137 (M.D. Fla. August 15, 2019) Dkt. 88, at *4 (holding that delivery drivers who "predominately make local deliveries and rarely cross state lines in the ordinary course of their employment" were exempt under Section 1).[6] As set forth further below, this extensive authority builds on the decisions by the Supreme Court at the time

---

construction that words generally should be interpreted as taking their ordinary ... meaning ... at the time Congress enacted the statute."139 S. Ct. at 535.

[6]      See also Muller v. Roy  Miller Freight Lines, LLC,  23 Cal. App. 5th1056, 1065-69 (Cal. Ct. App. 2019) (holding that  even though Plaintiff truck driver only transported goods within California and "was not  personally transporting goods from state to state, he played an integral role in transporting those  goods through interstate commerce."); Christie v. Loomis Armored US, Inc., 2011 WL 6152979, *3 (D. Colo. Dec. 9, 2011) (intrastate currency delivery driver found to be exempt under Section 1); Ward v. Express  Messenger Sys. Inc. dba Ontrac, Civ. A. No. 1:17 -cv-02005 (D. Co. Jan. 28, 2019), Dkt.  118  (intrastate "last-mile" delivery driver who worked entirely within Colorado found to be exempt   under Section 1).

of the FAA's passage, as well as Supreme Court authority interpreting the Section 1 exemption itself, all of which makes clear that the phrase "engaged in interstate commerce" refers to workers who transport goods or passengers "within the flow of interstate commerce."

In Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 116 (2001), the Supreme Court interpreted the phrase "engaged in commerce" in Section 1 of the FAA and noted that phrases such as "in commerce" or "engaged in commerce" were "often-found words of art…."  The Circuit City Court cited favorably to "a pair of cases decided in the 1974 Term concerning the meaning of the phrase 'engaged in commerce' in § 7 of the Clayton Act", noting that the court has "held that the phrase 'engaged in commerce'…'means *engaged in the flow of interstate commerce*…'"  Id. at 117 (citing United States v. American Building Maintenance Industry, 422 U.S. 271 (1975) at 283) (emphasis added).  Elsewhere, the Circuit City Court again cited Gulf Oil Corp. v. Copp Paving Co., 419 U.S. 186, 195 (1974), for the proposition that the "phrase 'engaged in commerce' 'appears to denote only persons or activities *within the flow of interstate commerce*.'"  Id. at 117–18 (emphasis added); see also id. at 118 (citing Gulf Oil Corp., 419 U.S. at 195 (noting that the "engaged in commerce" language "denote[s] only persons or activities within the flow of interstate commerce—the practical, economic continuity in the generation of goods and services for interstate markets and their transport and distribution to the consumer.")).

Moreover, in interpreting Section 1 of the FAA, the Supreme Court recently noted that "it's a 'fundamental canon of statutory construction' that words generally should be 'interpreted as taking their ordinary ... meaning ... *at the time Congress enacted the statute*.'"  Olivera, 139 S. Ct. at 539 (quoting Wisconsin Central Ltd. v. United States, 138 S.Ct. 2067, 2074 (2018)) (emphasis added).  Here, to be "engaged in interstate commerce" at the time of the FAA's passage in 1925 meant generally that one participated in the trafficking of goods or passengers

between different states (or countries)[7]; however, "interstate commerce" was also understood at the time to encompass intrastate transportation of goods that were bound for out-of-state or coming from out-of-state (or even work that did not involve the physical transportation of goods at all where that work was "so closely related to" interstate transportation "as to be practically a part of it."). See Baltimore & O. S. W. R. Co. v. Burtch, 263 U.S. 540, 542, 544 (1924). Thus, a "class of workers engaged in foreign or interstate commerce" in 1925 would be understood to include workers transporting goods or passengers within the flow of interstate commerce even if they themselves did not physically cross state lines (i.e. workers transporting passengers within a single state as part of a larger interstate journey).

Following this line of authority interpreting the phrase "engaged in interstate commerce," a Massachusetts court recently confirmed Plaintiffs' argument that "gig economy" delivery drivers who exclusively delivered meals from restaurants are exempt from the FAA. In Archer v. GrubHub, the Suffolk County Superior Court concluded that drivers for Postmates' competitor, GrubHub, were "engaged in interstate commerce" within the meaning of Section 1 because they transported goods within the flow of interstate commerce even when they did not ever cross state lines. Archer v. GrubHub, Inc.., No. 1984CV03277-BLS1 at 9-14 (Mass. Super. Ct. Jan. 11, 2021) (Exhibit A). The Archer court relied upon the United States Supreme Court's holding in Walling v. Jacksonville Paper Co., 317 U.S. 564 (1943) that "'[i]nterstate commerce' encompasses the 'entire movement of goods until their interstate journey was ended,' which end occurs when 'they reach the customers for whom they are intended.' To conclude otherwise would improperly ignore 'the continuous nature of the interstate transit which constitutes

---

[7]    See Noah Webster, Webster's Collegiate Dictionary 333 (3d ed. 1918) (defining "engaged" as "[o]ccupied; employed"); see also The Century Dictionary: An Encyclopedic Lexicon of the English Language 1929 (1914) (defining "engage," in relevant part, as "[t]o occupy one's self; be busied; take part").

commerce'" to rule that:

> [GrubHub drivers'] job duties … included the transportation and delivery of both pre-packaged food items and non-food items to GrubHub's Massachusetts customers with GrubHub's knowledge and consent. It is undisputed that some portion of those pre-packaged food items and non-food items came from manufacturers located outside this Commonwealth. It is also beyond dispute that the ultimate 'customers for whom … those items are intended' are the Grubhub customers who consumed or used them. Therefore, the pre-packaged and non-food products delivered by Plaintiffs constitute part of the continuous flow of 'interstate commerce,' and Plaintiffs' function in physically transporting those products to their final destinations necessarily qualifies them as 'transportation workers' who were 'engaged in … interstate commerce' for purposes of the exemption contained in Section 1 of the FAA.

Id. at 12. Further, the Archer court cited to the First Circuit's decision in Waithaka when it noted

that it was not unique "in its conclusion that 'last mile' delivery drivers … are exempt from the

provisions of the FAA." Id. As Postmates drivers' job duties mirror those of GrubHub drivers

and they both deliver both food and non-food goods, it is clear that Postmates drivers are

engaged within the flow of interstate commerce.

Postmates attempts to argue that Plaintiffs cannot qualify for the Section 1 exemption

because "[e]very court to address the question has held drivers … like Postmates do not fall

within the transportation worker exemption." Dkt. 17-1 at 14. As detailed supra, this assertion is

contrary to the First Circuit's ruling in Waithaka and the numerous other courts that have ruled

that delivery drivers fall within this exception.[8] While Postmates relies heavily on Wallace v.

---

[8]      Postmates attempts to dismiss and distinguish Cunningham v. Lyft, Inc., 2020 WL 1503220, by narrowly tailoring the court's holding in that case to airports. But the Cunningham court's reliance on Walling and Waithaka demonstrate that its ruling was not restricted to goods traveling to and from an airport. As the Cunningham court relied upon the Supreme Court's Walling "holding that goods remain in interstate commerce where there is a practical continuity of movement" to find that "[p] laintiffs help facilitate that movement, as the … last leg of the journey … [t]herefore, the Lyft drivers are part of the chain of interstate commerce, enabling their passengers to leave or enter Massachusetts. As such, the Lyft drivers are similar to Amazon's last mile delivery driver engaged in interstate commerce in Waithaka." Cunningham, 450 F. Supp. 3d at 46 (internal citations omitted).

Grubhub Holdings, Inc., 970 F.3d 798 (7th Cir. 2020), the court in Archer v. Grubhub correctly recognized that decision "directly contravene[s] the Supreme Court's holding in *Walling* that goods 'remain in interstate commerce' until they reach their 'final destinations,' and that workers who transport such goods solely within state boundaries nonetheless are engaged in 'interstate commerce.'" Archer, Ex. A at 13. In addition, Postmates relies on numerous cases that, as shown by the compelling rationale of Archer, were simply decided incorrectly or are distinguishable. For example, Postmates also relies on Levin v. Caviar, Inc., 146 F. Supp 3d 1146 (N.D. Cal. 2015), which the Archer court distinguished, noting that "Plaintiffs also delivered pre-packaged food items and non-food items originating from outside the Commonwealth of Massachusetts that undeniably form part of the 'continuous nature of the interstate transit which constitutes commerce.' Accordingly, the Court likewise declines to follow *Levin* and any similarly-reasoned decisions." Id. at 14.[9] Here, Postmates drivers deliver include even more prepackaged items than the GrubHub drivers in Archer, as Postmates advertises itself as a company that delivers all sorts of products, not just meal delivery from restaurants as GrubHub drivers do.  See supra at 4 and Dkt. 1-1 Exhibit A at ¶ 11.

Indeed, if the Court were to disagree that Plaintiffs' work delivering items to customers involves interstate transportation of goods (and thus agrees with Postmates' argument that its business is purely *local* delivery of goods), then Postmates' contracts with its drivers would not even be covered by the FAA, since Section 2 of the FAA limits the FAA's coverage to contracts

---

Further, Postmates cites to Austin v. Doordash, Inc., 2019 WL 4804781 (D. Mass. Sept. 30, 2019), to argue that delivery drivers are not a transportation worker.  However, Austin preceded the First Circuit's ruling in Waithaka, and Plaintiffs submit that was incorrectly decided, as confirmed by the recent decision in Archer.

[9]     The Levin court did not consider or address the question of whether drivers who deliver prepackaged foods or other goods may fall under the transportation worker exemption to the FAA.

related to interstate commerce. While Section 1 of the FAA (as set forth above) exempts from the FAA's coverage transportation workers engaged in interstate commerce, Section 2 makes clear that any contracts must involve interstate commerce even to fall under the coverage of the FAA in the first place.[10]  In Oliveira, the Supreme Court reopened this issue of what constitutes "interstate commerce" for purposes of Section 2 of the FAA. In New Prime, the Supreme Court enunciated that the "interstate commerce" requirement in sections 1 and 2 *must be defined in relation to each together.* 139 S. Ct. at 537 ("§1 helps define § 2's terms").[11]

Because Postmates drivers satisfy all three requirements of the FAA "transportation worker" exemption from the FAA, the Court may not enforce Postmates' arbitration clause under federal law.

### B. Massachusetts Law Prohibits Arbitration Agreements Containing Class Action Waivers

Because the FAA does not apply, the Court must instead look to Massachusetts law, namely the MAA, Mass. Gen. L. c. 251 § 1, to determine if Postmates' arbitration agreement is

---

[10]   In other words, pursuant to Section 2 of the FAA, the FAA only pertains to contracts related to interstate commerce.  Section 1 then exempts those contracts that relate to transportation workers engaged in interstate commerce.  If Postmates' contracts do not even involve interstate commerce in the first place, then pursuant to Section 2, the FAA does not apply at all, and arbitration cannot be compelled.  See Bradley v. Brentwood Homes, Inc., 398 S.C. 447, 454 (2012) ("[I]n order to activate the application of the FAA, the commerce involved in the contract must be interstate or foreign.").  Indeed, it is clear that the FAA *could not* apply to contracts unrelated to interstate commerce because such regulation would be outside Congress' power under the Commerce Clause. See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2003) (recognizing that the Commerce Clause limits reach of FAA).

[11]   Postmates will likely argue that courts noted that "interstate commerce" in Section 2 has been interpreted more broadly than in Section 1.  But that does not mean that "interstate commerce" must *always* be found in Section 2, particularly where it is not found in Section 1.  There must be some line drawn as to what constitutes interstate commerce (even for purposes of Section 2).  Moreover, the cases that have held "interstate commerce" in Section 2 to be broader than the term is used in Section 1 predated Oliveira, where the Supreme Court expressly held that "interstate commerce" in the two sections must be read in relation to one another.

enforceable under state law.  Postmates' agreement expressly provides that if "the FAA does not apply, the state law governing arbitration agreements in the state in which the Contractor performs services shall apply."  See Dkt. 17-6 at § 11A(I).  Here, that state law is the law of Massachusetts, where Plaintiffs and the putative class they seek to represent have performed their work for Postmates.  Stripped of the overlay of federal preemption under the FAA, Massachusetts law prohibits the enforcement of arbitration agreements containing class action waivers, as a matter of public policy.

The First Circuit has addressed this exact question, deciding in Waithaka v. Amazon.com, Inc., 966 F.3d 10, 26 (1st Cir. 2020), that where the FAA does not apply (because the plaintiffs are exempt from the FAA under the transportation worker exemption), then Massachusetts law would not allow the enforcement of an arbitration agreement containing a class action waiver.  In Waithaka, the First Circuit recognized that, absent federal preemption, Massachusetts law does not allow the enforcement of arbitration clauses containing class waivers, as made clear by the SJC in Feeney v. Dell Inc., 454 Mass. 192 (2009).  That principle, established in Feeney with respect to consumer claims, was extended to employment claims (including workers classified as independent contractors who contend they were misclassified) in Machado v. System4 LLC, 465 Mass. 508, 514 (2013)).[12]

Thus, because the Plaintiffs seek to bring claims under the Massachusetts Wage Act and Postmates' agreement contains an express class action waiver, Dkt. 17-6 at 11B(II), the agreement's class waiver violates Massachusetts public policy and is unenforceable under

---

[12]     In Machado, the SJC held that "where the right to a class proceeding has been waived as part of an agreement to arbitrate, [AT&T Mobility LLC v. Concepcion, 563 U.S. 333 (2011)] interprets the FAA to require enforcement of that class waiver regardless of any State law or policy to the contrary." 465 Mass. at 515.  In other words, Machado held that *where the FAA applies*, it preempts the state law rule against class action waivers in employment agreements. However, here, the FAA does not apply for the reasons set forth above.

<u>Feeney</u> and <u>Machado</u> (and <u>Waithaka</u>).  Because the agreement specifically says that, if the class action waiver is not enforced, then a class claim must proceed in court rather than arbitration the Court must deny Postmates' motion to compel arbitration. Dkt. 17-6 at 11B(XIII).

## II.  Postmates Has Waived the Right to Arbitrate

Even though Postmates' arbitration agreement is not enforceable against Plaintiffs because they are exempt from the FAA (as described above), Plaintiffs nevertheless *did* attempt to pursue their claims in arbitration prior to filing this lawsuit.  Pursuant to Postmates' agreement, Plaintiffs filed arbitration demands with AAA but were unable to pursue their claims in arbitration.  The AAA closed their cases without allowing them to proceed.  Plaintiffs cannot be bound by an arbitration agreement that Postmates required them to follow but under which they could not pursue their claims. Further, Postmates cannot now, after the fact, rewrite the arbitration agreement and force Plaintiffs to engage in arbitration in a way they did not agree to.

After Plaintiffs filed their demands with AAA, they were informed by the AAA that it would not administer the arbitrations because Postmates:

> has not complied with [AAA] requests to abide by [AAA]'s Employment Due Process Protocol and/or our Employment Arbitration Rules. … [AAA] will not administer any employment-related claims involving [Postmates] until such time as [Postmates] notifies [AAA] of its intent to abide by the Protocol and Rules. Therefore, the AAA declines to administer this matter.

Dkt. 17-9, 17-10, and 17-11.[13]  As the Plaintiffs could not proceed with their claims in arbitration, they filed this current action in court.  Now, Postmates asks the Court to rewrite its agreement (and compel Plaintiffs to arbitrate with a different arbitration provider), so as to

---

[13]      The AAA refused to administer these arbitrations, since Postmates has refused to pay fees required under the AAA rules.  Postmates is more than capable of paying the AAA fees, as according to public documents filed by Uber Technologies, Inc.  ("Uber"), Uber purchased Postmates for an estimated $2.65 billion on or around July 5, 2020. Exhibit B.

require Plaintiffs to arbitrate in a way that was not part of the parties' agreement.  This the Court cannot do.

Importantly, "[a]rbitration clauses were not meant to be another weapon in the arsenal for imposing delay and costs in the dispute resolution process." Menorah Ins. Co. v. INX Reinsurance Corp., 72 F.3d 218, 222 (1st Cir. 1995). In its attempt to weaponize this Court, Postmates misleads this Court by misstating the facts and legal issues. Postmates' motion attempts to litigate its dispute with AAA in an effort to draw this Court's attention away from AAA's refusal to administer the Plaintiffs' arbitrations. Postmates omits that it was *its own actions* that caused the AAA to refuse to administer Plaintiffs' arbitrations. Indeed, Postmates chose AAA as the arbitration forum, chose AAA's rules for the arbitration, and now wants to impose another arbitration provider and another set of rules because its chosen rules were not favorable to the company when claims were brought against it. Postmates' failure to abide by its chosen arbitration forum's rules forecloses its ability to force Plaintiffs to arbitrate in another forum with another set of rules (that they never agreed to).

### A. Postmates Has Waived Its Right to Arbitration

By refusing to abide by AAA's rules, which Postmates itself required its drivers to agree to, Postmates has waived its right to compel Plaintiffs to arbitration. The issue of waiver is one for this Court to decide. Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 11–12 (1st Cir. 2005). "[P]arties are not free to invoke arbitration rights at any time or under any circumstances. A party may waive arbitration expressly or implicitly." In re Citigroup, Inc., 376 F.3d 23, 26 (1st Cir. 2004). It is well established that a defendant can waive arbitration by acting "inconsistently with a right to arbitrate." Id. (in determining whether the party has waived its right to arbitrate, courts look at "whether the party has actually participated in the lawsuit or has taken other action

inconsistent with his right"); see also Marlyn Nutraceuticals, Inc. v. lmprovita Health Products, Inc., 2008 WL 5068935 (D. Ariz. Nov. 25, 2008) ("Inconsistency usually is found when one party engages in **conduct preventing arbitration** ...") (emphasis added). Here, Postmates refused to pay fees in accordance with AAA's policies, which led AAA to refuse to arbitrate any further arbitrations involving Postmates.[14]

Numerous courts have held that where a party fails to pay its share of arbitration costs or otherwise seeks to frustrate an arbitration, that party cannot enforce the underlying arbitration agreement. See Brown v. Dillard's, Inc., 430 F.3d 1004, 1010, 1012 (9th Cir. 2005) (finding that employer "waived its right to arbitrate Brown's claims" because Brown had attempted to arbitrate, employer's actions frustrated the ability to arbitrate, and employee brought suit "as a last resort"); see also CellInfo, LLC v. Am. Tower Corp., 2020 WL 7024651, at *3 (D. Mass. Nov. 30, 2020) ("A question may arise … as to whether an arbitration 'has been had in accordance with the terms of the agreement,' 9 U.S.C. § 3, when it has been terminated due to the nonpayment of a party who has the ability to pay but simply chooses not to. Even if such an arbitration has been terminated in accordance with the rules governing the arbitration … it may be contrary to 'the structure and purpose of the FAA' to allow a party to an arbitration agreement to benefit from their intentional noncompliance with an arbitrator's rules."); Sink v. Aden Enterprises, Inc., 352 F.3d 1197, 1201 (9th Cir. 2003) (holding that a refusal to stay a proceeding and compel arbitration was warranted when the corporate defendant "had a fair chance to proceed with arbitration, but … scuttled that prospect by its non-payment of costs, impeding the arbitration to the point where the arbitrator cancelled the arbitration."); Pre-Paid Legal Servs.,

---

[14]    Postmates' refusal to pay AAA's fees is not only inconsistent with AAA's policies but is a direct breach of Postmates own agreement that reads "Postmates shall pay the arbitrator's and arbitration fees and costs, unless applicable law requires otherwise. Notwithstanding applicable law to the contrary, Postmates shall pay the arbitrator's and arbitration fees and costs related to any payment dispute." Dkt. 17-6 11B(VI).

Inc. v. Cahill, 786 F.3d 1287, 1288–89, 1299 (10th Cir.), cert. denied, 136 S. Ct. 373 (2015)

(court did not abuse its discretion in allowing claims to proceed in court where the defendant

compelled arbitration in the first instance and then refused to pay AAA fees because under such

circumstances, "the arbitration ha[d] been had in accordance with the terms of the agreement and

[defendant] was in default in proceeding with such arbitration."); Garcia v. Mason Contract

Prod., LLC, 2010 WL 3259922, at *1 (S.D. Fla. Aug. 18, 2010) (granting Rule 60(b) motion to

reopen case where defendant compelled arbitration but then failed to pay the required fees,

resulting in the arbitration's dismissal); Spano v. V & J Nat'l Enterprises, LLC, 2017 WL

3738555, at *12 (W.D.N.Y. Aug. 30, 2017); Nadeau v. Equity Residential Props. Mgmt. Corp.,

2017 WL 1842686 (S.D.N.Y. May 5, 2017) (where defendant did not pay its filing fee and the

AAA administratively terminated the case, plaintiff was permitted to pursue a subsequently filed

class action suit against the defendant because defendant was no longer able to enforce the

arbitration agreement). See also Tillman v. Tillman, 825 F.3d 1069, 1076 (9th Cir. 2016)

(because plaintiff could no longer pursue her claim in arbitration, since her arbitration case was

closed due to her inability to pay fees, she must be allowed to pursue her claims in court).

Postmates' failure to pay fees *it contractually agreed to pay* and its refusal to abide by the

arbitration rules that *it selected* should not now allow it to demand arbitration under other rules

or with other arbitration providers that the parties did not agree to.  This Court cannot rewrite

Postmates' arbitration agreement in a way that it now wishes it had written the agreement.

### B.  AAA as the Arbitration Provider is Integral to Postmates' Arbitration Agreement; Postmates Cannot Now Require Plaintiffs to Arbitrate With a Different Provider

In its motion, Postmates is asking this Court to rewrite its agreement, and this the Court

cannot do. KKW Enterprises, Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp., 184 F.3d

42, 52 (1st Cir. 1999) ("Courts may not rewrite the parties' agreements"). Postmates asks the Court to substitute JAMS under Section 5 of the FAA as an arbitration provider since the AAA will not administer the arbitration of Plaintiffs' claims.  But Postmates cannot simply force another arbitration association to be substituted for AAA.  First, as explained above, the FAA does not apply here, because Postmates drivers are transportation workers who are exempt from the FAA.

But, in any event, Postmates cannot, after the fact, change its agreement with Plaintiffs in order to force them to arbitrate with a different provider, who they did not agree to.  Arbitration is precluded when the chosen "forum is an integral part of the agreement to arbitrate, rather than an 'ancillary logistical concern.'" Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000). Numerous courts have found that the identification of the arbitrator in the agreement is an integral part of the agreement. See Moss v. First Premier Bank, 835 F.3d 260, 266 (2d Cir. 2016) ("[T]he district court correctly declined to compel Moss to arbitrate her claims before a forum to which she did not agree."); Inetianbor v. CashCall, Inc., 768 F.3d 1346 (11th Cir. 2014) (finding that an arbitration clause that provides "that any Dispute…will be resolved by Arbitration, which *shall be* conducted *by* the Cheyenne River Sioux Tribal Nation by an authorized representative in accordance with its consumer dispute rules and the terms of this Agreement" required participation of the named arbitrator); A-1 Premium Acceptance, Inc. v. Hunter, 557 S.W.3d 923, 928 (Mo. 2018) (en banc) (finding that the language of the agreement identifying the arbitrator "as the arbitration forum" foreclosed the party from "now look[ing] to section 5 of the FAA to expand the arbitration promise it extracted.").  Indeed, the Fifth Circuit held that "the mandatory, not permissive plain language of the arbitration provision evinces a specific intent of the parties to arbitrate before the NAF" when the parties' agreement read:

> You and we agree that any and all claims, disputes, or controversies ... *shall* be resolved by binding individual (and not class) arbitration by and under the Code of Procedure of the National Arbitration Forum.... This agreement to arbitrate all disputes *shall* apply no matter by whom or against whom the claim is filed. Rules and forms of the NAF may be obtained and all claims *shall* be filed at any NAF office.

Ranzy v. Tijerina, 393 F. App'x 174, 175 (5th Cir. 2010) (emphasis in original). Similar to the

agreement in Ranzy, Postmates' agreement read:

> [a]ny arbitration *shall* be governed by the AAA Rules…The arbitration *shall* be heard by one arbitrator selected in accordance with the AAA Rules…The AAA Rules may be found at www.adr.org or by searching for "AAA Commercial Arbitration Rules" using a service such as www.google.com or by asking Postmates to provide a copy.

Dkt. 17-6, Sections 11B(VI) and (VIII) (emphasis added). The mandatory, not permissive plain

language of Postmates arbitration provision evinces a specific intent of the parties to arbitrate

before the AAA. As such, this Court cannot use the FAA to circumvent the parties' intent to

arbitrate before the AAA.

Postmates cites Ferrini v. Cambece, 2013 WL 2421717 (E.D. Cal. June 3, 2013), and

Selby v. Deutsche Bank Tr. Co. Ams., 2013 WL 1315841 (S.D. Cal. Mar. 28, 2013), to argue

that "courts have applied Section 5 in a variety of factual scenarios leading to the designated

provider's unavailability—including where, as here, AAA has declined to administer an

arbitration." Dkt. 17-1 at 25. But those cases are factually inapposite.  In Ferrini, the AAA

declined to arbitrate because the dispute involved a credit card and "AAA decided to no longer

arbitrate credit card disputes." 2013 WL 2421717, at *3 n. 4. In addition, in Selby, the chosen

arbitration provider was unable to conduct consumer arbitration. 2013 WL 1315841 at 12. As

detailed supra, these cases are unlike this one, as it was only Postmates' refusal to comply with

the AAA's rules that led the AAA to decline to administer Plaintiffs' cases.

18

**III. The Court Also Cannot Grant Postmates' Motion Without Determining whether an Enforceable Online Agreement Was Formed Under Massachusetts Law**

Not only must Postmates' motion be denied because Plaintiffs are exempt from the FAA and because, despite their effort, they were not *able* to arbitrate their claims.  The motion must also be denied because there is not yet an adequate record upon which this Court could determine whether an enforceable agreement to arbitrate was even created.

The question of whether the parties have agreed to arbitrate is a question of state law. First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995).  Recently, the SJC announced, for the first time, the standard to be applied under Massachusetts law in determining when an online agreement was created.  In Kauders v. Uber Technologies, Inc., 486 Mass. 557, 572 (2021), the SJC held that, in determining the enforceability of an online contract, a court must determine "whether there is reasonable notice of the terms and a reasonable manifestation of assent to those terms."   The Court emphasized that this is a very fact-specific inquiry; "for Internet transactions, the specifics and subtleties of the 'design and content of the relevant interface' are especially relevant in evaluating whether reasonable notice has been provided."  Id. at 573 (quoting Meyer v. Uber Techs., Inc., 868 F.3d 66, 76 (2d Cir. 2017).  The SJC made clear that the party seeking to enforce the contract bears the burden to prove both prongs of this inquiry (reasonable notice *and* reasonable manifestation of assent).  Id. at 572.

Here, there is not enough of a record for the Court to determine whether the Kauders standard has been met.  In its motion, Postmates has presented only two selectively chosen screenshots, without actually showing the manner in which Postmates' agreement was shown to drivers on the app.  See Dkt. 17-2 at 3-4.  It is not possible to determine from the incomplete record whether drivers like Plaintiffs were given reasonable notice of Postmates' arbitration provision.  The Court cannot find that a valid agreement to arbitrate was formed based on this

scant presentation.  Thus, if the Court does not deny Postmates' motion based upon either of the other arguments presented above, the Court must allow Plaintiffs to conduct discovery as to the manner in which Postmates presented its agreement to drivers, so that an analysis may be made under Kauders.

## CONCLUSION

For the reasons set forth above, the Court should deny Postmates' motion to compel arbitration. Plaintiffs are transportation workers who are exempt under the FAA, and (stripped of federal preemption) Massachusetts law prohibits enforcement of arbitration agreements, like the one at issue here, that contain class action waivers.  Further, Plaintiffs attempted to arbitrate, but were not able to, and this Court cannot rewrite Postmates' arbitration agreement so as to give it another chance to force Plaintiffs to arbitrate.  Finally, it is not clear from the record whether an enforceable online agreement to arbitrate was formed under Massachusetts law, so discovery would be needed if the Court does not dispose of this motion on either of the prior two grounds.[15]

---

[15]     If, despite Plaintiffs' arguments, this Court decides to grant Postmates' motion, Plaintiffs request that the Court dismiss their complaint, rather than stay the case, so that they may appeal. See Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 86-87 n. 2 (2000) ("Had the District Court entered a stay instead of a dismissal in this case, that order would not be appealable."); Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 156 n. 21 (1st Cir. 1998) (in compelling arbitration, "a court may dismiss, rather than stay, a case when all of the issues before the court are arbitrable."); Cullinane v. Uber Techs., Inc., 2016 WL 3751652, at *10 (D. Mass. July 11, 2016), rev'd on other grounds, 893 F.3d 53 (1st Cir. 2018) ("Having determined in resolving the instant motion that all further issues shall be decided by the arbitrator, nothing remains for me to decide. A stay is unnecessary to await further developments. Consequently, I will dismiss the case, with recognition that as a collateral aspect of that disposition, this decision is immediately appealable to permit plaintiffs a timely opportunity to challenge it if they so choose.")

Dated:      February 4, 2021

Respectfully submitted,

DAMON IMMEDIATO, STEPHEN LEVINE, and
ERIC WICKBERG, on behalf of themselves and all
others similarly situated,

By their attorneys,


_s/ Shannon Liss-Riordan_
Shannon Liss-Riordan, BBO #640716
Michelle Cassorla, BBO #688429
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
617-994-5800
sliss@llrlaw.com
mcassorla@llrlaw.com


## CERTIFICATE OF SERVICE

This will certify that I served a copy of the foregoing document on all counsel, by ECF,
on this date.

Dated: February 4, 2021


_/s/   Shannon Liss-Riordan_
Shannon Liss-Riordan, Esq.