UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION No. 20-12308-RGS

DAMON IMMEDIATO, STEPHEN LEVINE, and
ERIC WICKBERG, on behalf of themselves
and all others similarly situated

v.

POSTMATES, INC.

MEMORANDUM AND ORDER
ON DEFENDANT'S MOTION TO COMPEL

March 4, 2021

STEARNS, D.J.,

Damon Immediato, Stephen Levine, and Eric Wickberg, couriers who worked for defendant Postmates, LLC f/k/a Postmates Inc. (Postmates), brought this putative class action in the Suffolk Superior Court objecting to their having been classified by Postmates as independent contractors. The alleged misclassification, they argue, has deprived them of employee benefits, such as the minimum wage, reimbursement for necessary business expenses, and paid sick leave. Postmates now moves for an order to stay the action and compel arbitration. For the following reasons, Postmates' motion to compel arbitration will be ALLOWED.

## BACKGROUND

Postmates is an online and mobile platform that connects customers with a variety of local merchants, including restaurants and grocery stores. *See* Compl. (Dkt # 1-1) ¶ 11 ("We deliver more than dinner.  Need another charger?  Kitchen staples?  Party supplies?  We've got everything you need available for delivery within an hour.").  Customer orders placed through Postmates are delivered by local drivers who have signed on as couriers.

Immediato, Levine, and Wickberg registered through a mobile application as Postmates couriers in 2017.  In doing so, they were required to assent to the Postmates Fleet Agreement, which included a "Mutual Arbitration Provision" (the Provision).[1]  Among the various terms of the Provision, the one most relevant to the issue before the court is the parties' stipulation "that this Mutual Arbitration Provision is governed exclusively by the Federal Arbitration Act (9 U.S.C. §§ 1-16) (FAA) and shall apply to any and all claims between the Parties, including but not limited to those arising out of or relating to this Agreement."  Modlin Decl. Ex. F (Dkt # 17-8) § 10A(i).  The Provision then proceeds to list the claims it covers, including

---

[1] The agreement was revised in 2018 and 2019, and Postmates' application required couriers to renew their consent to the updated terms. As there are no material differences between the iterations, the court relies on the language in the 2019 version.  *See* Modlin Decl. (Dkt # 17-2) ¶¶ 17-20; Modlin Decl. Ex. F (Dkt # 17-8).

"classification as an independent contractor." *Id.* As is not uncommon in agreements of this type, the Provision prescribes that "[o]nly an arbitrator, and not any federal, state, or local court or agency, shall have the exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this Mutual Arbitration Provision, including without limitation any dispute concerning arbitrability." *Id.* § 10A(ii). Finally, it provides that, with some exceptions, the "arbitration shall be governed by the AAA [American Arbitration Association] Rules." *Id.* § 10B(vi).

Plaintiffs initially sought to bring their claims before the AAA, but it declined to arbitrate. As explained in letters sent to each plaintiff, "[t]he employer in this matter [Postmates] has not complied with our requests in the past to abide by our Employment Due Process Protocol and/or our Employment Arbitration Rules. Accordingly, we will not administer any employment-related claims involving this employer . . . ." Modlin Decl. Ex. G (Dkt # 17-9); Modlin Decl. Ex. H (Dkt # 17-10); Modlin Decl. Ex. I (Dkt # 17-11). The letters refer to Postmates' failure to pay the AAA's fees in earlier cases during a mass arbitration campaign. The AAA has, however, since stated that it will "abide by any court order compelling arbitration before AAA." Manthripragada Decl. Ex. A (Dkt # 17-13) at 2.

On December 31, 2020, Postmates removed the case to the federal district court.  Postmates now seeks to compel arbitration.

## DISCUSSION

### FAA § 1 Transportation Workers Exception

Plaintiffs contend that they are not covered under the FAA, which by its own terms does not apply to "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1.  The Supreme Court, however, has narrowly construed the § 1 exemption to apply solely to "contracts of employment of transportation workers" engaged in interstate commerce.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001).

It is the goods, and not the workers, that define engagement in interstate commerce.  Whether an individual worker crosses a state line — or a foreign border — is immaterial to the determination.  *See Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 26 (1st Cir. 2020); *Rittmann v. Amazon.com, Inc.*, 971 F.3d 904, 915 (9th Cir. 2020).  Plaintiffs argue that because some of the goods they deliver are sourced from out-of-state manufacturers, they remain in the flow of interstate commerce while Postmates drivers cart them from the local store to the local customer.  In this sense, they contend that Postmates drivers are analogous to Amazon's

"last-mile delivery workers," who the First Circuit has held to be covered by the § 1 exemption.  *See Waithaka*, 966 F.3d at 26.  However, as the Ninth Circuit has observed, "cases involving food delivery services like Postmates and Doordash are . . . distinguishable" from Amazon's last-mile delivery workers because Amazon shipments travel through a national network of warehouses in which the in-state warehouse is simply a staging stop in the interstate journey.  *See Rittman*, 971 F.3d at 915-916 ("The packages are not held at warehouses for later sales to local retailers; they are simply part of a process by which a delivery provider transfers the packages to a different vehicle for the last mile of the packages' interstate journeys.").

It is true that one can find differences of opinion among courts over application of the § 1 exception to local food delivery workers.  *Compare Austin v. Doordash, Inc.*, 2019 WL 4804781, at *4 (D. Mass. Sept. 30, 2019) (concluding that a Doordash driver "is not a transportation worker exempted by section 1 of the FAA"), *with Archer v. GrubHub, Inc.,* No. 1984CV03277-BLSI, at *12 (Mass. Super. Ct. Jan. 11, 2011) (Dkt # 21-1) (analogizing GrubHub drivers to Amazon "last mile" delivery drivers).[2]  Cases like *Archer*,

---

[2] *Archer* reflects the distinctly minority view.  *See*, *e.g.*, *Austin*, 2019 WL 4804781, at *3-4 ("Plaintiff makes no allegation of a commercial connection between any interstate food distributor and the customers that receive prepared meals via Plaintiff's delivery."); *Lee v. Postmates Inc.*, 2018 WL 6605659, at *7 (N.D. Cal. Dec. 17, 2018) (concluding that "making only

however, are not precedential and largely ignore the Supreme Court's "admonition that § 1 as a whole must be 'afforded a narrow construction.'" *Wallace v. Grubhub Holdings, Inc.*, 970 F.3d 798, 802 (7th Cir. 2020), quoting *Circuit City*, 532 U.S. at 118.  As the Seventh Circuit observed:

> A package of potato chips . . . may travel across several states before landing in a meal prepared by a local restaurant and delivered by a Grubhub driver; likewise, a piece of dessert chocolate may have traveled all the way from Switzerland.  The plaintiffs insist that delivering such goods brings their contracts with Grubhub within § 1 of the FAA.  As they see it, the residual exemption is not so much about what the worker does as about where the goods have been.  But to fall within the exemption, the workers must be connected not simply to the goods, but to the act of moving those goods across state or national borders.  Put differently, a class of workers must themselves be "engaged *in the channels* of foreign or interstate commerce."

*Id.*, quoting *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir. 1998)

(emphasis added).[3]

---

local deliveries, for a company that does not hold itself out as transporting goods between states" is not engaging in interstate commerce within the meaning of § 1).

[3] Likewise, this court's decision that Lyft drivers "are within a class of transportation workers excluded from coverage by Section 1 of the FAA" does not support plaintiffs' position.  *Cunningham v. Lyft, Inc.*, 450 F. Supp. 3d 37, 47 (D. Mass. 2020).  *Cunningham* dealt with the movement of passengers to and from the airport and, relying in part on *Walling v. Jacksonville Paper Co.*, 317 U.S. 564 (1943), emphasized the "continuity of motion in interstate travel . . . ."  450 F. Supp. 3d at 46-47.

**Compelling Arbitration Under the FAA**

"Congress passed the FAA in 1925 'to overcome judicial hostility to arbitration agreements.'" *Waithaka*, 966 F.3d at 16, quoting *Circuit City*, 532 U.S. at 118. This "pro-arbitration purpose counsel[s] in favor of narrowly construing the Section 1 exemption." *Id.* at 17. Under the FAA, "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.[4] A party seeking to compel arbitration pursuant to the FAA usually "must show [1] that a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope." *Ouadani v. TF Final Mile LLC*, 876 F.3d 31, 36 (1st Cir. 2017), quoting *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003). However, "parties may delegate

---

[4] Plaintiffs also contend that if their employment is not within the scope of the § 1 exemption, then they are not within the FAA's jurisdiction under § 2, because both sections refer to commerce. However, the Supreme Court has made clear that the phrase "engaged in . . . commerce" as used in § 1 is to be construed more narrowly than the phrase "involving commerce" as used in §2. *See Circuit City*, 532 U.S. at 115. The Supreme Court's more recent statement in *New Prime Inc. v. Oliveira*, 139 S. Ct. 532 (2019), broadly noting that "§ 1 helps define § 2's terms," *id.* at 537, does not overrule its specific holding that the two terms are not co-extensive.

threshold arbitrability questions to the arbitrator, so long as the parties' agreement does so by 'clear and unmistakable' evidence." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 139 S. Ct. 524, 530 (2019), quoting *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Here, the Provision contains a broad delegation clause, assigning to "an arbitrator, and not any federal, state, or local court or agency . . . exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability, or formation of this . . . Provision, including without limitation any dispute concerning arbitrability." Modlin Decl. Ex. F § 10A(ii). Because the provision clearly and unmistakably delegates questions about the scope of the Provision to the arbitrator, this court need only determine whether a valid agreement to arbitrate was entered into in the first place (a matter of state law).[5] *See First Options*, 514 U.S. at 944.

Under Massachusetts law, an online contract is enforceable if there is "reasonable notice of the terms and a reasonable manifestation of assent to those terms." *Kauders v. Uber Techs., Inc.*, 486 Mass. 557, 572 (2021); *see also Ajemian v. Yahoo!, Inc.*, 83 Mass. App. Ct. 565, 573-574 (2013). Here,

---

[5] Postmates argues that whether the parties formed an enforceable agreement to arbitrate is one of the threshold questions of arbitrability delegated to an arbitrator. The argument is legally untenable. *See Henry Schein,* 139 S. Ct. at 530; 9 U.S.C. § 2.

both elements are satisfied.  First, plaintiffs were provided reasonable notice that they were entering into an online agreement because they could not complete the sign-up process to register as couriers without clicking on a link which opened the Fleet Agreement.  *See* Modlin Decl. (Dkt # 17-2) ¶ 9.  This link was displayed beneath text which prominently read: "Before continuing, you'll need to agree to the following terms."  *Id.* ¶ 8.  Moreover, plaintiffs were further alerted to the Arbitration Provision by text, in all-capital letters, in the second paragraph of the Fleet Agreement.  *See* Modlin Decl. Ex. F at 2 ("PLEASE REVIEW THIS AGREEMENT CAREFULLY, SPECIFICALLY THE MUTUAL ARBITRATION PROVISION IN SECTION 10.  UNLESS YOU OPT OUT OF ARBITRATION . . . THIS AGREEMENT REQUIRES THE PARTIES TO RESOLVE DISPUTES THROUGH FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS . . . .").  Second, after opening the link, plaintiffs were required to assent to the terms by clicking "Agree" before being able to return to the registration process.  *See* Modlin Decl. ¶¶ 10-11.  Both *Kauders* elements are thus satisfied.

**Waiver of the Right to Arbitrate**

Plaintiffs finally contend that Postmates has waived its right to arbitrate by failing to pay arbitration fees in unrelated matters, thus violating the AAA's rules and causing the AAA to refuse to administer plaintiffs'

claims.  This argument fails for two reasons.  In the first instance, plaintiffs have no standing to assert any rights that the AAA may have to fees in unrelated matters.  Second, the AAA has mooted the issue by agreeing to arbitrate if the court orders it to do so.  The court so orders.[6]

## Individual Arbitration Before AAA

The Mutual Arbitration Provision includes a class action waiver, specifying that "any and all disputes or claims between the Parties will be resolved in individual arbitration" and that "an arbitrator shall not have any authority to hear or arbitrate any class and/or collective action."  Modlin Decl. Ex. F § 10(B)(ii).  "In the Federal Arbitration Act, Congress has instructed federal courts to enforce arbitration agreements according to their terms – including terms providing for individualized proceedings."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).  Accordingly, the plaintiffs must arbitrate their disputes individually before the AAA pursuant to Postmates' Fleet Agreement.

---

[6] *See* Manthripragada Decl. Ex. A (Dkt # 17-13) at 2 (email from AAA's representative clarifying that "[t]he AAA will abide by any court order compelling arbitration before AAA"); Manthripragada Decl. Ex. B (Dkt # 17-14) at 3-4 (joint case management statement explaining that "[o]n August 10, 2020, Plaintiff Ahmed Wadsworth filed his demand for arbitration with [AAA], pursuant to this Court's order compelling arbitration under the 2019 Fleet Agreement . . . . the AAA has accepted Plaintiff Wadsworth's case").

## ORDER

For the foregoing reasons, Postmates' motion to compel arbitration is

<u>ALLOWED</u>.   The court hereby orders the AAA to provide the necessary

arbitration services.[7]  The Clerk will stay the case pending arbitration.[8]

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[7] The court will retain jurisdiction over this aspect of the order should any future dispute arise over a failure of Postmates to pay the AAA the appropriate fees and costs for its services in this matter.

[8] Plaintiffs request that the court dismiss the proceedings rather than stay them pending arbitration.  However, § 3 of the FAA provides that "the court . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.